**In re Petition for DISCIPLINARY ACTION AGAINST Dennis R. LETOURNEAU, a Minnesota Attorney, Registration No. 62443.**

No. A05–755.

Supreme Court of Minnesota.

April 13, 2006.

Kenneth Jorgensen, Dir., Timothy M. Burke, Sr. Asst. Dir., Office of Lawyers Professional Responsibility, St. Paul, for appellant.

Edward F. Kautzer, St. Paul, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action alleging that Dennis R. Letourneau neglected a client matter, failed to keep that client informed about her matter, made a misrepresentation to that client, and failed to cooperate with the Director's investigation of these matters, in violation of Rules 1.3, 1.4, 8.1(a)(3), and 8.4(c), Minnesota Rules of Professional Conduct. The matter was heard by a referee, appointed by this court, who found that Letourneau violated Rules 1.3 (diligence) and 1.4 (communication). The referee recommended that Letourneau be publicly reprimanded. The referee also concluded that there was not clear and convincing evidence that Letourneau had violated Rules 8.1(a)(3) (noncooperation) or 8.4(c) (misrepresentation). The Director appeals the findings and conclusion related to the alleged violation of Rule 8.4(c), and requests that Letourneau be suspended for 60 days and placed on two years of supervised probation. After a thorough review of the record, we conclude that the referee's findings relating to Rule 8.4(c) are not clearly erroneous. We publicly reprimand Letourneau for his violation of Rules 1.3 and 1.4 and place him on supervised probation for one year.

The record provides the following facts. Darcie Sutherland, then a minor, was injured in a candy store on June 11, 1996. Sutherland's parents retained Letourneau in July 1996 to represent Sutherland in connection with the injury. When Sutherland reached the age of majority, Letourneau continued to represent her on the

claim. While Letourneau undertook numerous activities on the file, he ultimately failed to commence an action on Sutherland's behalf before the six-year statute of limitations expired.

Letourneau continued to meet with Sutherland after the statute of limitations expired, with the most recent meeting occurring in the summer of 2004. Additionally, Letourneau successfully represented Sutherland in a nursing licensure matter in August of 2003. Letourneau told Sutherland sometime in 2003 that he would deduct his legal fees for the licensure matter from the recovery in Sutherland's personal injury claim. Letourneau never informed Sutherland that the statute of limitations applicable to her claim had expired, and she learned in early 2005 from another attorney that it had. Sutherland complained to the Director in March of 2005.

Letourneau has substantial experience in the practice of law, and was admitted to practice in 1970. He practices primarily in personal injury matters and is familiar with the law governing the statute of limitations. According to Letourneau, he became a sole practitioner in 1998, after working with a partnership for 28 years. From 1998 until 2002 Letourneau shared office space with another firm and ran his "accounting through their system." In January 2002, Letourneau moved his law practice, and he was apparently practicing alone when the statute of limitations expired on Sutherland's claim. Letourneau, who admittedly is not "very computer literate," had a case management program installed on his computer in July, 2005, to help prevent him from making a similar statute of limitations error in the future. His wife, who is familiar with computers, is now working with him to help with administrative matters.

After receiving contact from Sutherland, the Director commenced a disciplinary proceeding against Letourneau. This court appointed the Honorable Randall J. Slieter to act as referee. After hearing the evidence the referee issued Findings of Fact, Conclusions of Law and Recommendations for Discipline. The referee concluded that Letourneau violated Rule 1.3 because he did not commence Sutherland's personal injury action before the statute of limitations expired.[1] Additionally, the referee concluded that Letourneau violated Rule 1.4 because he did not inform Sutherland that the statute of limitations had expired.[2] These findings are not at issue in this appeal.

Regarding Rule 8.4(c), the referee found that the Director had not met his burden of proving a violation.[3] Specifically, the referee found that it was "not clear * * * whether [Letourneau] knew that the statute of limitations had expired or, rather, whether his office procedures * * * simply failed to provide the appropriate reminder for the statute of limitations expiration date." Because of this finding, the referee also found that "it is not clear whether [Letourneau] knew [that] his statement to Ms. Sutherland [regarding the deduction of legal fees from the licensing matter from her personal injury recovery] was

---

1. "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3.

2. "A lawyer shall keep a client reasonably informed about the status of a matter * * *." Minn. R. Prof. Conduct 1.4(a), 14 Minn.Stat.

1386 (2004) (amended June 17, 2005, eff. Oct. 1, 2005).

3. "It is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Minn. R. Prof. Conduct 8.4(c).

false." The Director challenges both of these findings.

In determining the recommended discipline, the referee assessed Letourneau's prior discipline and found that Letourneau was privately admonished in February of 2001 "for providing financial assistance to a client, failing to cooperate with the Director's investigation and practicing law while suspended for nonpayment of the attorney registration fee." Additionally, in April of 2003, Letourneau stipulated to a private probation of two years for making a loan to a different client in violation of Rule 1.8 and for failing to cooperate with the Director in the investigation of that and another allegation of misconduct. The referee concluded that the private admonition was a minimally aggravating factor, and that the private probation was "a neutral factor for purposes of disposition" because the discipline occurred after the expiration of the statute of limitations at issue here.

The referee also assessed mitigating factors in determining a recommendation for discipline. The referee found a character witness's testimony to be credible in describing Letourneau as "one of the best personal injury attorneys in the state and [having] a high reputation for honesty and good character." Additionally, the referee found Letourneau to be credible in expressing regret for his error, in indicating "that he would take personal responsibility for his error," and in promising to never make a similar error in the future. The referee also credited Letourneau's testimony that he had never been sued for malpractice, and noted that there was no evidence Letourneau had missed any other statutes of limitation. The referee listed all of these factors as mitigating, but did not explain what weight he placed on them in making his recommendation that Letourneau be publicly reprimanded.

## I.

■■■ We first address the Director's contention that the referee clearly erred in failing to find that Letourneau violated Rule 8.4(c). We have indicated that a lawyer's statements made with "intent to deceive" constitute a violation of Rule 8.4(c). *See In re Westby*, 639 N.W.2d 358, 370 (Minn.2002) ("A lawyer * * * violates Rule 8.4(c) by making false representations with an intent to deceive."). The Director alleges that Letourneau violated Rule 8.4(c) when he "told Sutherland [in 2003] that he would deduct his legal fees for the licensure matter from Sutherland's personal injury recovery." The Director argues that when Letourneau made this statement he knew the statute of limitations had expired and that "there could be no recovery on the time-barred claim." By implying the opposite to Sutherland, the Director concludes, Letourneau intended to mislead Sutherland in violation of Rule 8.4(c).

■■ The Director's theory ignores the burden of proof assigned to the Director in proving misconduct. "Allegations of professional misconduct must be proven by 'full, clear and convincing evidence.' " *In re Gherity*, 673 N.W.2d 474, 480 (Minn. 2004) (quoting *In re Ruhland*, 442 N.W.2d 783, 785 (Minn.1989)). The Director chose not to ask Letourneau when he first knew the statute had expired or whether, at the time of the fee arrangement, he thought Sutherland's claim was still viable. Instead, the Director argues Letourneau must be deemed to have known that the statute had already expired when he discussed the fee arrangement with Sutherland because he did not claim not to have known. The Director also cites, as additional evidence of knowledge, Letourneau's testimony that he "was not in any way attempting to deceive or do anything to

the Sutherlands in the way of the situation that I knew had run." Finally, the Director argues a letter Letourneau sent to the candy store's insurer on June 5, 2002, shortly before the statute expired, proves Letourneau knew the statute had expired by the time he had the fee conversation with Sutherland.

The evidence the Director relies upon does not establish clear and convincing proof that Letourneau knew the statute of limitations had expired or that Letourneau knew Sutherland's claim was no longer viable at the time he had the fee conversation with Sutherland. At best, the evidence is ambiguous on the question of what Letourneau knew and when he knew it.

 Moreover, while the inferences made by the Director are plausible, the conclusion the Director seeks to draw from the evidence gives no deference to the referee's findings. Because the Director ordered a transcript of the referee's hearing, the referee's findings and conclusions of law are not binding on this court. *In re Wentzell,* 656 N.W.2d 402, 405 (Minn.2003). Although not binding, this court gives "great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's credibility, demeanor, or sincerity." *Id.* This court must be " 'left with the definite and firm conviction that a mistake has been made' " in order to find that a referee's findings were clearly erroneous. *Id.* (quoting *In re Strid,* 551 N.W.2d 212, 215 (Minn.1996)). "If the referee's findings are supported by the evidence, they will be upheld." *In re Erickson,* 653 N.W.2d 184, 189 (Minn.2002).

The referee's findings rest upon his assessment of Letourneau's credibility, and these findings are supported by the evidence. Letourneau repeatedly indicated that he believed that Sutherland might still recover on the personal injury claim. Letourneau also testified that he "was not in any way attempting to deceive or do anything to the Sutherlands." Given this testimony, the referee had evidence that Letourneau's intent in making the fee arrangement with Sutherland was not deceptive, but merely practical—he would not ask her to pay for the licensing matter until she recovered on the personal injury matter (a matter for which Letourneau expected a recovery). The referee's finding that "[t]he Director has failed to establish, by clear and convincing evidence," that Letourneau violated Rule 8.4(c) is not clearly erroneous.

II.

██ We turn now to the question of the appropriate discipline in this case. The referee recommended that Letourneau be publicly reprimanded. "Although a referee's recommendation for discipline carries great weight, we have final responsibility for determining whether discipline is appropriate and, if so, the type of discipline to be imposed." *In re Edinger,* 700 N.W.2d 462, 467 (Minn.2005). At oral argument, the Director argued that a public reprimand and two years of supervised probation would be appropriate if this court determined, as we have, that a Rule 8.4(c) violation had not been proven.

 "The purpose of disciplinary sanctions for professional misconduct is not to punish the attorney, but rather 'to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.' " *In re Vaught,* 693 N.W.2d 886, 890 (Minn.2005) (quoting *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004)).

We consider four factors in determining the appropriate sanction: (1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; and (4) the harm to the legal profession. Disciplinary actions are imposed on a case-by-case basis after considering both aggravating and mitigating circumstances, as well as looking to similar cases for guidance.

*Id.* at 890 (citation omitted).

We generally impose "more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined." *In re Moore*, 692 N.W.2d 446, 450 (Minn. 2005). The parties do not dispute the referee's findings of aggravating and mitigating factors, but the Director argues that the referee placed insufficient weight on Letourneau's prior discipline in recommending discipline for the instant case.

In particular, the Director disputes the referee's conclusion that Letourneau's prior stipulation for private probation should be treated as a "neutral factor" in determining Letourneau's discipline. The referee treated the stipulation as a neutral factor because the stipulation was signed after the expiration of the statute of limitations applicable to Sutherland's personal injury claim. This court generally treats prior discipline as an aggravating factor even when the prior discipline is imposed after the misconduct at issue occurs. *See, e.g., In re Brehmer*, 642 N.W.2d 431, 434 (Minn.2002) (noting attorney's prior discipline in determining current discipline when majority of misconduct for current petition occurred before prior discipline was imposed). Accordingly, the referee did not place appropriate weight on this aggravating factor.

The Director further argues that the prior misconduct was of a similar nature to Letourneau's current misconduct and therefore requires a more severe sanction. Although the Director is correct that Letourneau's prior misconduct should be treated as an aggravating factor, we disagree with the Director's argument that Letourneau's private probation for a failure to cooperate with the Director is similar to a failure to act diligently on behalf of a client.

Recent decisions of this court disciplining attorneys for violations of Rules 1.3 and 1.4 have ordered public reprimands, as the referee in the instant case recommended. *E.g., In re Ohlsen*, 696 N.W.2d 786, 787 (Minn.2005); *In re Moore*, 692 N.W.2d at 451; *In re Ruhland*, 689 N.W.2d 167, 167 (Minn.2004). In each of those cases, we ordered supervised probation as well.

Letourneau's failure to commence an action for Sutherland prior to the expiration of the statute of limitations is a serious lapse of diligence. By not informing her of the expiration of the statute of limitations, he compounded his error and caused her additional harm. Although we accept the referee's finding that Letourneau has installed a case management system to help him avoid such an error in the future, we are concerned that Letourneau's lack of experience in working as a sole practitioner in his own office increases the risk of similar errors. Therefore, to prevent similar harm to other clients, we conclude that one year of supervised probation should be added to the discipline recommended by the referee. Thus, the appropriate discipline is a public reprimand, one year of supervised probation, and payment of $900 in costs pursuant to Rule 24, Rules on Lawyers Professional Responsibility. The supervised probation shall include the following conditions:

(1) Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation and promptly respond to the Director's correspondence by the due date. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct which may come to the Director's attention. Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify compliance with the terms of this probation.

(2) Respondent shall abide by the Minnesota Rules of Professional Conduct.

(3) Respondent shall be supervised by a licensed Minnesota attorney, appointed by the Director, to monitor compliance with the terms of this probation. Respondent shall provide to the Director the names of four attorneys who have agreed to be nominated as respondent's supervisor within two weeks from the date of this opinion. If, after diligent effort, respondent is unable to locate a supervisor acceptable to the Director, the Director will seek to appoint a supervisor. Until a supervisor has signed a consent to supervise agreement, the respondent shall on the first day of each month provide the Director with an inventory of active client files described in paragraph 4 below. Respondent shall make active client files available to the Director upon request.

(4) Respondent shall cooperate fully with the supervisor's efforts to monitor compliance with this probation. Respondent shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. Respondent shall submit to the supervisor an inventory of all active client files by the first day of each month during the probation. With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date. Respondent's supervisor shall file written reports with the Director at least quarterly.

(5) Respondent shall initiate and maintain office procedures which ensure that there are prompt responses to correspondence, telephone calls, and other important communications from clients, courts, and other persons interested in matters which respondent is handling, and which will ensure that respondent regularly reviews each and every file and completes legal matters on a timely basis.

So ordered.