In re Petition for **DISCIPLINARY ACTION AGAINST Dennis R. LETOURNEAU, a Minnesota Attorney, Registration No. 62443.**

**No. A09–1861.**

Supreme Court of Minnesota.

Jan. 5, 2011.

Martin A. Cole, Director, Patrick R. Burns, First Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Edward F. Kautzer, Ruvelson & Kautzer, Chartered, St. Paul, MN, for respondent.

OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (OLPR) served

and filed a petition for discipline in September 2009 alleging that Dennis R. Letourneau neglected a client matter, did not adequately communicate with his clients, did not obtain his clients' approval before agreeing to forego certain claims, and failed to cooperate with the Director's office in its investigation of the complaint against him. Following a hearing, a referee appointed pursuant to Rule 14, Rules on Lawyers Professional Responsibility (RLPR), concluded that Letourneau had committed the violations as alleged and recommended that Letourneau be indefinitely suspended from the practice of law with no eligibility to apply for reinstatement for one year. We conclude that the referee's findings are not clearly erroneous and suspend Letourneau from the practice of law with no right to petition for reinstatement for a minimum of one year.

Letourneau was admitted to the practice of law in Minnesota in 1970. He practices primarily in personal injury matters. Letourneau has three previous disciplinary incidents. In 2001, he was admonished for providing financial assistance to a client, failing to cooperate with a disciplinary investigation, and practicing law while suspended for nonpayment of the attorney registration fee. In 2003, Letourneau was placed on two-year private probation for making a loan to a client and failing to cooperate with a disciplinary investigation. In 2006, we publicly reprimanded Letourneau and placed him on one year of supervised probation for neglecting a client mat-

ter and failing to keep his client informed about her matter. *See In re Letourneau*, 712 N.W.2d 183 (Minn.2006).

On February 20, 1999, Frederick and Carol Ennenga retained Letourneau to pursue claims against a Kmart pharmacy for making a mistake in filling a prescription. In December 1998, the pharmacy filled Frederick Ennenga's prescription with a blood thinner instead of his prescribed blood pressure medication. As a result of taking the incorrect medication, on February 6, 1999, Ennenga suffered a ruptured aneurysm requiring surgery and four to five weeks of hospitalization. Ennenga lost kidney function and three of his toes were amputated. Letourneau took no formal legal action until February 6, 2003, the last day allowed by the four-year statute of limitations.[1] Letourneau commenced an action in Hennepin County District Court by serving Kmart Corporation, Kmart Pharmacies of Minnesota, and employees Heidi Scheppmann and Mary Geronime with a summons and complaint. The complaint also named the pharmacist on duty, Elizabeth Geer, as a defendant, but she was not served until February 9, 2005, after the four-year health-care provider and six-year personal injury statutes of limitations had both expired.

By the time Letourneau filed suit, Kmart had filed for Chapter 11 bankruptcy.[2] As a result of the bankruptcy, all attempts to collect on debts arising before January 22, 2002—including civil lawsuits in state court—were automatically stayed.[3]

---

1. "An action by a patient or former patient against a health care provider alleging malpractice, error, mistake, or failure to cure, whether based on a contract or tort, must be commenced within four years from the date the cause of action accrued." Minn.Stat. § 541.076(b) (2010).

2. Because Kmart Corporation and Kmart Pharmacies of Minnesota were both named as defendants and had filed for bankruptcy to-

gether, we refer to them collectively as "Kmart."

3. When a personal injury defendant files for bankruptcy and the debt is dischargeable, the plaintiff can either (1) make a motion in bankruptcy court to lift the automatic stay and pursue the personal injury claim to the extent of the debtor's insurance, or (2) liquidate the claim in bankruptcy court. *See* 11 U.S.C.

*See* 11 U.S.C. § 362 (2006). The deadline for submitting a proof of claim in the bankruptcy proceeding was July 31, 2002. Letourneau nevertheless filed a proof of claim on May 1, 2003, two months after Kmart informed Letourneau of the bankruptcy. Kmart filed an omnibus objection in bankruptcy court seeking relief from (among other things) the Ennengas' claim. The bankruptcy court continued consideration of Kmart's motion with respect to the Ennengas' claim.[4] Letourneau took no action to lift the bankruptcy stay and did not pursue recovery in bankruptcy court, claiming that he did not want his clients to have to settle for the 6.25% to 9.7% of damages Kmart's reorganization plan would have paid to the Ennengas.

On May 12, 2005, Kmart moved to have the district court dismiss the Ennengas' suit. Letourneau did not file the Ennengas' response to the motion until the night before the hearing on that motion, six days after the response was due. As a result, the court refused to allow Letourneau to present oral argument. The court granted Kmart's motion, concluding that the claims against all defendants failed because (1) Mary Geronime was not a pharmacist, (2) Heidi Scheppmann was not employed by Kmart at the time Mr. Ennenga was given the wrong medication, (3) Elizabeth Geer was not timely served, and (4) the bankruptcy proceedings precluded the lawsuit against Kmart. The court also noted that Letourneau had not complied with discovery deadlines or court-ordered scheduling deadlines. Letourneau waited one month before forwarding Kmart's discovery requests to the Ennengas, responded to dis-

covery requests three months after they were due, served his own discovery requests too late to allow for the required 30–day response period, and served a notice of taking depositions that gave only one day advance notice to depose four people. Letourneau also failed to execute a stipulation to dismiss Elizabeth Geer from the lawsuit even though he had agreed to do so in a conference with the district court and was sent a prepared stipulation for his signature. The court awarded Kmart $600 in attorney fees for the extra work due to Letourneau's untimely filings.

The Ennengas fired Letourneau in 2008, complained to the OLPR, and filed a malpractice suit against Letourneau. The malpractice suit was settled in 2010.

After receiving the Ennengas' complaint, the Director sent a notice of investigation to Letourneau on September 10, 2008, and requested a response within 14 days. Letourneau did not provide the requested information until October 29, 2008, after several communications from the Director and after Letourneau promised but failed to deliver the materials several times. The Director responded on October 30, 2008, with a request for more information. Again, Letourneau made several promises to deliver the materials but failed to do so. The Director eventually told Letourneau that he would charge Letourneau with noncooperation if the Director did not receive the responses by January 14, 2009. Letourneau sent his responses on January 16, 2009. On February 25, 2009, Letourneau agreed to pro-

---

§ 362 (2006). Kmart was self-insured up to $2 million.

4. The Ennengas had four claims in the bankruptcy proceedings. Kmart moved to disallow three of those claims as duplicates and to disallow the remaining claim as having no

merit. The court continued its consideration of both the duplicate claims and the remaining claim until April 27, 2004. The duplicate claims were eventually disallowed on June 25, 2007. The record does not indicate the fate of the Ennengas' remaining claim.

vide the Director with additional documents by March 18, 2009. Letourneau did not provide the information until the pre-hearing discovery phase. During the disciplinary proceedings, Letourneau was served with discovery requests on November 24, 2009, but did not respond until March 18, 2010.

Letourneau challenged the petition for disciplinary action and the matter came before the referee on March 30, 2010. The referee found on conflicting testimony that Letourneau had failed on a number of occasions either to inform his clients of the status of their case or to get their consent on critical decisions affecting the case. The referee found that Letourneau did not promptly inform the Ennengas of Kmart's bankruptcy filing, explain the impact of the bankruptcy filing on their claim, tell the Ennengas about the requirements for filing a proof of claim, or explain that the bankruptcy stay could be lifted to allow the district court case to proceed. The referee found that Letourneau did not tell his clients that he had not served Elizabeth Geer before the statute of limitations had run or that the claim was likely to fail against two of the defendants because one was not a pharmacist and the other was not employed at the pharmacy until after

Mr. Ennenga's prescription was filled incorrectly. The referee found that Letourneau had not told the Ennengas that attorney fees had been awarded as a result of his failure to meet deadlines, that Letourneau had agreed to dismiss Elizabeth Geer from the action without consulting the Ennengas, and that without consulting the Ennengas, Letourneau made a deal to give up their right to appeal the dismissal order in exchange for Kmart's promise not to collect the attorney fees it had been awarded. Finally, the referee found that Letourneau had not advised the Ennengas of the hearing in the district court at which the motion to dismiss their case was argued.

The referee concluded that Letourneau's failure to timely serve Elizabeth Geer violated Minn. R. Prof. Conduct 1.1[5] and 1.3;[6] that his failure to explain to his clients the effect of Kmart's bankruptcy on the state court litigation, Kmart's motion for dismissal, the district court's dismissal, and his clients' appeal right violated Minn. R. Prof. Conduct 1.4(b);[7] that his failure to consult with his clients before agreeing to dismiss Elizabeth Geer from the action and agreeing to waive their right to appeal violated Minn. R. Prof. Conduct 1.2(a)[8] and 1.4;[9] that his failure to timely respond

---

5. "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Minn. R. Prof. Conduct 1.1.

6. "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3.

7. "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Minn. R. Prof. Conduct 1.4(b).

8. "[A] lawyer shall abide by a client's decisions concerning the objectives of representa-

tion and as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued.... A lawyer shall abide by a client's decision whether to settle a matter." Minn. R. Prof. Conduct 1.2(a).

9. (a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;

to discovery requests violated Minn. R. Prof. Conduct 1.1, 3.2,[10] 3.4(c),[11] and 8.4(d);[12] that his failure to pursue alternative dispute resolution procedures violated Minn. R. Prof. Conduct 1.1, 1.3, and 3.2; and that his failure to cooperate with the Director's investigation violated Minn. R. Prof. Conduct 3.4(d)[13] and 8.1(b),[14] and Rule 25, RLPR.[15] Letourneau contested the findings and recommendations, arguing that five of the referee's findings of fact were not supported by clear and convincing evidence, that the doctrine of judgmental immunity protected his conduct as the "honest mistakes" of someone acting in his professional capacity, that his failure to cooperate with the Director was not "egregious," and that the referee did not recommend an appropriate level of discipline.

■■■ Allegations of professional misconduct must be proven by "full, clear and convincing evidence." *In re Ruhland*, 442 N.W.2d 783, 785 (Minn.1989). The clear-and-convincing standard is met when "the truth of the facts asserted is 'highly probable.'" *In re Moeller*, 582 N.W.2d 554, 557 (Minn.1998) (quoting *In re Miera*, 426 N.W.2d 850, 853 (Minn.1988)). When a hearing transcript is ordered, the referee's findings are subject to review on the record and are upheld unless clearly erroneous. *In re Westby*, 639 N.W.2d 358, 367 (Minn.2002); *In re Jensen*, 468 N.W.2d 541, 543–44 (Minn.1991). Findings of fact are reversed only if "upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made." *In re Pinotti*, 585 N.W.2d 55, 62 (Minn.1998). The referee's findings are given great deference. *Jensen*, 468 N.W.2d at 543. "[A] referee's failure to make certain findings of fact is reviewed for clear error." *In re Aitken*, 787 N.W.2d 152, 158 (Minn.2010).

■■■ Letourneau argues that he did not neglect the Ennengas' lawsuit and that his

---

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Minn. R. Prof. Conduct 1.4. Before 2005, Rule 1.4(a) stated: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Minn. R. Prof. Conduct 1.4(a) (2004).

10. "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Minn. R. Prof. Conduct 3.2.

11. "[A lawyer shall not] knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Minn. R. Prof. Conduct 3.4(c).

12. "[It is professional misconduct for a lawyer to] engage in conduct that is prejudicial to the administration of justice." Minn. R. Prof. Conduct 8.4(d).

13. "[A lawyer shall not] in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Minn. R. Prof. Conduct 3.4(d).

14. "[A lawyer in connection with a disciplinary matter shall not] knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6." Minn. R. Prof. Conduct 8.1(b).

15. "It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director or the Director's staff, the Board, or a Panel, by complying with reasonable requests...." Rule 25, RLPR.

actions were simply matters of professional judgment.[16] He claims that the Ennengas' case was more complex than it appeared and that his actions were simply the result of a strategy to maximize his clients' recovery. He points to his efforts to find a way to recover more than the "pennies on the dollar" the Ennengas would have received under a bankruptcy settlement and argues that he continued to research possible avenues for recovery in the face of Kmart's bankruptcy and lack of insurance coverage for the individual defendants.

We disagree. Letourneau demonstrated incompetent representation of a client under Minn. R. Prof. Conduct 1.1 by not communicating with his clients, consistently missing deadlines, failing to make filings needed to preserve his clients' claim, and failing to serve a potential defendant before the statute of limitations had run.

■ Letourneau also disputes findings that Letourneau did not inform his clients of the significant events in their litigation and failed to respond promptly to their inquiries. Letourneau and the Ennengas offered conflicting testimony as to the frequency and extent of Letourneau's communications with them. The referee credited the Ennengas' testimony over Letourneau's. We give particular deference to a referee's determination of credibility. *In*

re Winter, 770 N.W.2d 463, 467 (Minn. 2009). The findings that Letourneau did not inform his clients of the significant events in their litigation are supported by the record.

■ Letourneau further argues that the referee erred by finding that Letourneau had not cooperated with the Director's investigation. Letourneau claims that he eventually provided all documents the Director requested. He admits, however, that he did not respond in writing to the Director's last request for documents and other information until the discovery phase of the disciplinary process had begun. After a thorough review of the record, we conclude that the referee's findings that Letourneau failed to cooperate with the Director's investigation and failed to timely respond to the Director's discovery requests are not clearly erroneous.

■ The referee recommended that Letourneau be indefinitely suspended from the practice of law with eligibility to apply for reinstatement after one year, with reinstatement conditioned on Letourneau seeking professional help to address his trouble with deadlines. Letourneau argues that the recommended discipline is excessive.

■ "Although a referee's recommendation for discipline carries great

16. Letourneau argues that a "doctrine of Judgmental Immunity" has "long been recognized as a defense for attorneys who make honest mistakes acting in their professional capacity." He cites *Savings Bank v. Ward*, 100 U.S. 195, 198, 25 L.Ed. 621 (1879), for the rule that if an attorney "acts with a proper degree of skill, and with reasonable care and to the best of his knowledge, he will not be held responsible." He cites no Minnesota case law adopting a "doctrine of Judgmental Immunity" in attorney discipline cases although we have noted that "[a]n attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in

the best interest of his client is not answerable for a mere error of judgment." *Meagher v. Kavli*, 256 Minn. 54, 60, 97 N.W.2d 370, 375 (1959). But even were such a doctrine to apply, it would not protect Letourneau's conduct. The Director charged Letourneau with, among other things, violation of Minn. R. Prof. Conduct 1.1, which requires competent representation, defined as "the legal knowledge, skill, thoroughness, and preparation *reasonably necessary* for the representation." Minn. R. Prof. Conduct 1.1 (emphasis added). The essence of this charge is that Letourneau did not act with "a proper degree of skill" or with "reasonable care."

weight, [the supreme court has] final responsibility for determining whether discipline is appropriate and, if so, the type of discipline to be imposed." *In re Edinger*, 700 N.W.2d 462, 467 (Minn.2005). "The purpose of disciplinary sanctions for professional misconduct is not to punish the attorney, but rather 'to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.'" *In re Vaught*, 693 N.W.2d 886, 890 (Minn.2005) (quoting *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004)). We consider four factors in determining the appropriate sanction: "(1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; and (4) the harm to the legal profession." *Vaught*, 693 N.W.2d at 890. We consider "both the aggravating and the mitigating circumstances of the particular case in determining the appropriate discipline." *In re Albrecht*, 779 N.W.2d 530, 540 (Minn.2010).

■■■ The misconduct in this case involves incompetent legal representation, neglect of a client matter, failure to communicate with clients, failure to obtain client approval before agreeing to forego claims, and not fully cooperating with an investigation. "Indefinite suspension is typical in cases involving continued or repeated neglect of client matters without evidence of mitigating circumstances." *In re Merlin*, 572 N.W.2d 737, 741 (Minn. 1998). Failure to cooperate with the Director's investigation is a violation of Rule 25, RLPR, and Minn. R. Prof. Conduct 8.1(b), and is misconduct that may result in suspension. *See In re Karlsen*, 778 N.W.2d 307, 312 (Minn.2010). Although we have imposed less severe sanctions on attorneys who responded to the Director's requests late than we have on attorneys who failed to respond at all,[17] Letourneau's partial and slow response to the Director is, at a minimum, an aggravating factor.

■■■ Furthermore, Letourneau represented the Ennengas in this matter during his two probationary periods.[18] "[T]he fact that misconduct occurs while an attorney is already on probation suggests that a more serious sanction may be needed to prevent such misconduct from recurring." *Albrecht*, 779 N.W.2d at 537.

■■■ We generally impose "more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined." *In re Moore*, 692 N.W.2d 446, 450 (Minn. 2005). Letourneau has previously been disciplined for failure to cooperate in the disciplinary process and for neglecting a client matter and failing to keep his clients

---

**17.** *Compare In re Cartwright*, 282 N.W.2d 548, 552 (Minn.1979) (suspending for six months an attorney who completely failed to respond to the Director's investigation, even though the matter under investigation had been closed without charges), *with In re Erickson*, 653 N.W.2d 184, 192 (Minn.2002) (ordering a 30–day stayed suspension and four years of probation for an attorney who had not responded to an OLPR investigation over a two-year period and only delivered requested documents in response to a pre-hearing discovery order), *In re Stanbury*, 614 N.W.2d 209, 214 (Minn.2000) (imposing a public reprimand and two years of unsupervised probation on an attorney with a history of disciplinary actions who failed to respond to a Director's investigation for ten months), *and In re Terrazas*, 581 N.W.2d 841, 843 (Minn.1998) (publicly reprimanding and placing on two years of probation an attorney who replied late to some of the Director's inquiries and not at all to others and did not comply with discovery requests until the court ordered that he do so).

**18.** Letourneau was on private probation from April 21, 2003, through April 20, 2005, and under one-year probation from April 13, 2006, to April 12, 2007.

informed. *See In re Letourneau,* 712 N.W.2d 183, 185 (Minn.2006). In the most recent case, Letourneau was given a public reprimand and one year of supervised probation. *Id.* at 189–90.

We further consider the harm to the public resulting from the attorney's actions. The harm to the client in this case is clear. Despite Letourneau's protestations about complicating factors, the Ennengas had a strong case. Kmart provided the wrong medication and Mr. Ennenga suffered serious physical harm as a result. The Ennengas had a strong case on liability and there is no suggestion that Mr. Ennenga was at all to blame for his injuries. The Ennengas received only a relatively small legal malpractice settlement. Furthermore, client neglect "generally 'undermines public confidence in the legal profession, which harms the public, the legal profession and the justice system.' " *Albrecht,* 779 N.W.2d at 542 (quoting *In re Keate,* 488 N.W.2d 229, 235 (Minn.1992)).

Letourneau's conduct harmed the legal system in other ways. He pursued a case in district court long after it was clear the case could not go forward against any of the defendants and refused to participate in the mediation process. By doing so, he needlessly increased the burden on a heavily loaded and underfunded court system. Lack of cooperation with a disciplinary investigation also harms the legal system because it "undermine[s] ... the integrity of the lawyer disciplinary system." *In re Gomsrud,* 618 N.W.2d 803, 805 (Minn.2000); *see also, e.g., In re Neill,* 486 N.W.2d 150, 151 (Minn.1992) (writing that "respondent's complete lack of cooperation" with the Director exhibited "a disturbing disregard for the disciplinary process and complete indifference to the profession").

Based on Letourneau's misconduct, and the aggravating circumstances found, the referee recommended that Letourneau be suspended indefinitely with no right to apply for reinstatement for one year. The referee also recommended that Letourneau be permitted to reapply only if he had sought professional help to address his chronic inability to perform his duties in a timely manner and proves that he understands the root causes of his problem and has satisfactorily remedied it. We do not formally adopt the recommendation that Letourneau seek professional help as a requirement of his discipline. Before any attorney may be reinstated, he must meet the standards for reinstatement. These standards include an acknowledgement of wrongdoing and indication that there has been a change of heart. Given the record before us, we see no compelling reason to otherwise deviate from the referee's recommendation.

Accordingly, we order that:

1. Respondent Dennis R. Letourneau be indefinitely suspended from the practice of law, effective 14 days after the filing of this order, and that he be ineligible to petition for reinstatement for a minimum of one year from the effective date of the suspension.

2. Letourneau shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3. If Letourneau seeks reinstatement, he shall comply with the requirements of Rule 18(a)-(c), RLPR.

4. Letourneau shall pay $900 in costs pursuant to Rule 24, RLPR.

So ordered.