# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2498
_____

Lowell P. Burris; Joyce P. Burris

*Plaintiffs - Appellants*

v.

Gulf Underwriters Insurance Company

*Defendant - Appellee*

Versa Products, Inc.; G and L Products, Inc.; Menard, Inc.

*Defendant*s
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: March 10, 2015
Filed: May 27, 2015
_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.
_____

BEAM, Circuit Judge.

Lowell and Joyce Burris (jointly "Burris") appeal the district court's[1] denial of their motion for a new trial following a jury verdict in favor of Gulf Underwriters Insurance Company ("Gulf"). We affirm.

## I.   BACKGROUND

Lowell Burris was severely injured falling from a ladder in August 2001. In 2007, Burris brought claims in Minnesota state court against the ladder's manufacturers, Versa Products, Inc. and G & L Products, Inc. (jointly "Versa"), and against the seller of the ladder, Menard, Inc. ("Menard"). Menard removed on the basis of diversity jurisdiction.

In May 2008, Gulf, Versa's former insurance company, filed a separate insurance coverage declaratory judgment action, seeking a declaration that it had no duty to defend Menard or Versa. The product liability case was stayed pending the outcome of the insurance coverage issue. In the insurance coverage case, the district court granted Gulf's motion for summary judgment. On appeal, we reversed the district court's decision in the declaratory judgment action, and remanded with instructions to dismiss the case. We held the preferred procedure under Wisconsin[2] law is for the interested insurance company to intervene in the underlying litigation, rather than the filing of a separate action on the coverage issue alone. See Gulf Underwriters Ins. Co. v. Burris, 674 F.3d 999 (8th Cir. 2012).

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[2]We reviewed Gulf's liability policy in accordance with Wisconsin law as the case was removed to federal court on diversity jurisdiction and the liability policy was issued in Wisconsin.

Accordingly, in September 2012, Gulf moved to intervene in the product liability action. The district court granted the motion, and stayed the liability proceedings pending the resolution of the coverage issue. In September 2013, Burris and Versa entered into an agreement under Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982),[3] in which Versa admitted liability and permitted Burris to seek recovery from Gulf. Versa had a "claims made" insurance policy issued by Gulf effective March 3, 2003, through May 5, 2003 ("Coverage Period"). Under the terms of the policy, a claim would be covered by Gulf if it was "made" within the Coverage Period, regardless of when the underlying injury occurred. The policy stated that a claim was "made" when notice of a claim was "received and recorded" by Gulf or any insured, in this case Versa. The policy required Versa to notify Gulf "as soon as practicable" when Versa received a claim.

Gulf and Burris each brought motions for summary judgment on the insurance coverage issue. Burris claimed that Gulf's policy covered his claim against Versa because his former attorney, Dennis Letourneau, mailed a letter to Versa on March 14, 2003 ("March 2003 Letter"). While this would have been within the Coverage Period–thus triggering coverage under the claims made policy–Gulf denied that Versa received or recorded the March 2003 Letter. In support of his motion for summary judgment, Burris submitted affidavits from Letourneau and his secretary, Gina Dorethy, which stated that the March 2003 Letter to Versa was mailed. The court found that this evidence triggered a rebuttable presumption under Wisconsin law that the March 2003 Letter was received, even though there was no physical evidence–such as a photocopy of the signed final letter–that the letter was mailed. However, the district court also found that testimony by Versa's former CEO, David Lambert, that Versa did not receive the March 2003 Letter, rebutted the presumption,

_____

[3]This Minnesota case provided that an insured can stipulate to liability and assign his rights against his liability insurer to a claimant in exchange for the claimant's release of the insured from personal liability. Shugart, 316 N.W.2d at 732-35.

therefore making this an issue for a jury. Accordingly, the district court denied both motions, finding a genuine issue of material fact existed as to whether Versa received Burris's March 2003 Letter within the period Versa was insured by Gulf.

This issue proceeded to a jury trial in December 2013, and both parties submitted motions in limine. One of Burris's requests was for the district court to include an adverse inference instruction on account of alleged spoliation of evidence. Burris asserted that thirty-three boxes of records, which were sent back to Versa by Paul Junius, a third-party claims handler working for Risk Retention Services ("RRS"), were willfully destroyed by Versa in 2006. Burris also requested that the district court exclude any evidence of Letourneau's attorney disciplinary history, arguing that it was irrelevant to this case and prejudicial. The court preliminarily denied Burris's request for a spoilation instruction, noting that there was no evidence in the record of intentional destruction, but invited Burris to seek the instruction again after producing evidence at trial that such an instruction was warranted.[4] The district court granted in part, and denied in part, Burris's motion in limine regarding Letourneau's disciplinary history. The district court allowed evidence of Letourneau's disciplinary history which related to his office mailing practices, but excluded introduction of any evidence of the consequences Letourneau faced as a result of the disciplinary proceedings.

At the conclusion of the trial, the jury returned a verdict for Gulf, finding that Versa did not receive the March 2003 Letter within the Coverage Period. Burris moved for a new trial, or in the alternative asked for reconsideration of his motion for summary judgment. Burris argued that the district court erred in declining to issue a spoilation instruction, and in admitting evidence of Letourneau's disciplinary history. The district court declined to grant a new trial, finding that the introduction of

---

[4]After both Burris and Gulf rested their cases, the district court reconsidered Burris's request for a spoilation instruction, but declined to issue one, finding that the facts presented at trial were not sufficient to warrant the instruction.

Letourneau's disciplinary history was not error and did not result in a miscarriage of justice, and finding that there was insufficient evidence to show bad faith or intentional destruction in anticipation of litigation as to the records, and that accordingly a spoilation instruction was not warranted. Finally, the district court found that reconsideration of its motion for summary judgment was improper after a trial had already been held. Burris appeals.

## II. DISCUSSION

### A. Motion for a New Trial

#### 1. Standard of Review

Rule 59(a) of the Federal Rules of Civil Procedure provides that a court may grant a motion for a new trial "on all or some of the issues." Fed. R. Civ. P. 59(a)(1). "We review the denial of a motion for a new trial for a clear abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." Wagner v. Jones, 758 F.3d 1030, 1033-34 (8th Cir. 2014), cert. denied, 135 S. Ct. 1529 (2015).

#### 2. Adverse Instruction for Spoliation of Evidence

Burris first argues that a new trial is warranted because the district court erred in declining to issue an adverse inference instruction for spoilation of evidence. We review a district court's decision to give a particular instruction for an abuse of discretion. Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 460 (8th Cir. 2013). In such cases, "[w]e will order a new trial only if the error misled the jury or had a probable effect on its verdict." Id. (internal quotation omitted).

Burris requested the district court read the following instruction to the jury:

> If evidence is destroyed that could reasonably be expected to have been produced, and the party who destroyed the evidence fails to give a reasonable explanation, you may decide that the evidence would have been unfavorable to that party.

Burris argued to the district court, and continues to argue on appeal, that Lambert made an intentional decision to destroy thirty-three boxes of claim files and records, which Burris asserts may have contained his March 2003 Letter to Versa. As evidence to support his claim for an adverse inference instruction, Burris pointed to a portion of Lambert's deposition, where Lambert acknowledged that the files in question were destroyed and that he and his attorney both agreed they should be destroyed. However, in its order denying Burris's motion for a new trial, the district court concluded this evidence was insufficient to show that the files had been destroyed in anticipation of litigation, and thus declined to grant a new trial to Burris on this basis.

In diversity cases, a district court applies federal law to the issue of adverse inference instructions for spoilation of evidence. Sherman v. Rinchem Co., 687 F.3d 996, 1006 (8th Cir. 2012). In order for an adverse inference instruction for spoilation to be warranted, a district court is required to make two findings: "(1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." Hallmark, 703 F.3d at 460 (internal alteration and quotation omitted). The evidence Burris relied upon was insufficient to establish that Lambert destroyed the boxes to suppress the truth regarding Burris's claim. The evidence at trial did not establish that Lambert knew Burris's March 2003 Letter was in the boxes, nor did the evidence suggest Lambert destroyed the boxes because he knew litigation would be forthcoming. Additionally, Lambert's testimony indicated that any letters related to Burris's claim would *not* have been in the thirty-three destroyed boxes because, at the time Burris's March 2003

Letter was allegedly sent, Versa was no longer using Junius and RRS as their third-party claims handler.[5]  Thus, the district court did not abuse its discretion by denying Burris's request for a spoilation instruction.  Cf. Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d 971, 981 (9th Cir. 2009) (holding that a district court did not abuse its discretion in declining to issue a spoilation instruction where there was no evidence that the party alleged to have spoiled the evidence "knew that litigation would be forthcoming when they allowed the evidence to spoil").

Furthermore, even if Burris had presented evidence that Lambert intentionally destroyed the files to suppress the truth, and that this destruction prejudiced Burris, an adverse inference instruction would not be warranted against Gulf because Gulf had no involvement in the alleged spoilation of the documents, nor any access, or control, over the destroyed files.  Adkins v. Wolever, 692 F.3d 499, 504-05 (6th Cir. 2012) (holding that the requirements for a spoilation instruction were not met where the party against whom the instruction was sought had no control over the destroyed evidence).  Since the imposition of an adverse inference instruction for spoilation is a kind of sanction meant, in part, to shift the burden to the spoilating party to prove the destroyed evidence was not favorable to them, 126 Am. Jur. 3d Proof of Facts § 21 (2012), it defies the purpose of the sanction to impose it on a party that played no part in the alleged spoilation of evidence.  Accordingly, the district court did not abuse its discretion in rejecting Burris's requested spoilation instruction.

### 3.    Evidentiary Determinations

Second, Burris argues that a new trial is warranted because the district court erred in admitting evidence of Letourneau's disciplinary history.  Burris argues this

---

[5]RRS began handling claims for Versa in the early 1990s, and ceased taking new claims from Versa prior to March 2003.  The files Junius returned to Versa in 2006 were previous claims RRS had been storing on Versa's behalf.

evidence was irrelevant and prejudicial, and should have been excluded under Federal Rules of Evidence 401, 402, and 403.[6] We review the district court's evidentiary rulings for an abuse of discretion. United States v. Oleson, 310 F.3d 1085, 1091 (8th Cir. 2002). "[A]n allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result." Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 833 (8th Cir. 2005) (internal quotation omitted).

The Minnesota Supreme Court held disciplinary proceedings concerning Letourneau twice. First, in 2006, he was disciplined for failing to serve a client's complaint within the statute of limitations. In re Letourneau, 712 N.W.2d 183 (Minn. 2006) (per curiam). During this proceeding, Letourneau did not dispute the finding that he had violated the rule regarding diligence, and as part of the disciplinary action the court imposed a condition on Letourneau that he "shall initiate and *maintain office procedures* which ensure that there are *prompt responses to correspondence*, telephone calls, and other important communications from clients, courts, and other persons interested in matters which respondent is handling." Id. at 190 (emphasis added).

In 2011, Letourneau was again disciplined for failing to timely serve a potential defendant within the statute of limitations, failing to make necessary filings to preserve his clients' claim, and not cooperating in a timely manner with the disciplinary investigation. In re Letourneau, 792 N.W.2d 444 (Minn. 2011) (per curiam). The court found "Letourneau demonstrated incompetent representation of a client . . . by not communicating with his clients, consistently missing deadlines, failing to make filings needed to preserve his clients' claim, and failing to serve a potential defendant

---

[6]Rule 401 of the Federal Rules of Evidence states, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides, in part, "[i]rrelevant evidence is not admissible." Lastly, Rule 403 states that relevant evidence may be excluded by the court "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

before the statute of limitations had run." Id. at 451. Letourneau disputed these allegations, but the Minnesota Supreme Court held the record supported the findings. Id. As a result, Letourneau was suspended from the practice of law indefinitely, with no right to petition for reinstatement for a minimum of one year. Id. at 453.

At trial in the instant case, Letourneau and Dorethy testified about Letourneau's office procedures for mailing letters. Letourneau and Dorethy did not specifically remember mailing the March 2003 Letter to Versa, nor have any physical evidence that the letter had been mailed, but testified the letter would have been mailed, relying on their office practices for mailing letters. As a result, the district court found Letourneau's disciplinary history relevant for the purposes of rebuttal and impeachment, and allowed it to be admitted at trial, because the reliability of Letourneau's office procedures was a "relevant issue for the jury to consider in its determination of whether the [March 2003] letter was mailed and received." The district court did not find any prejudice resulting from this evidence, especially none that substantially outweighed its highly probative relevance. The court, additionally, excluded evidence of the consequences Letourneau faced as a result of the disciplinary proceedings, in order to further minimize any risk of prejudice. Accordingly, Federal Rules of Evidence 401, 402 and 403 clearly support the admissibility of evidence concerning Letourneau's disciplinary problems.

Letourneau's office practices were fully relevant evidence, since the central issue at trial was whether the March 2003 Letter from Letourneau was received by Versa within the Coverage Period. Rule 406 provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine." Fed. R. Evid. 406. Thus, the evidence of Letourneau's previous shortfallings with client correspondence and timeliness was relevant to rebut Letourneau's assertions that his office practices were so reliable that the March 2003 Letter could be presumed to have been mailed. Cf. United States v. Mulder, 147 F.3d 703, 708 (8th Cir. 1998) (stating that the excluded testimony of defendant's routine practice of handling

financial statements may have been admissible for the purposes of impeachment if the issue of defendant's handling of financial statements was at issue in the case); Schillie v. Atchison, Topeka & Santa Fe Ry. Co., 222 F.2d 810, 814 (8th Cir. 1955) (stating that "[i]f such evidence of an isolated instance is offered at a proper time and sufficient similarity of conditions is shown to exist, it is admissible not as proof of a custom, but as rebuttal in contradiction of the asserted universal custom to the contrary").

Thus, the only question remaining is whether the probative value of the evidence introduced about Letourneau's disciplinary history was substantially outweighed by the danger of unfair prejudice. A trial court "has broad discretion in determining the relevancy and admissibility of evidence." United States v. Jiminez, 487 F.3d 1140, 1145 (8th Cir. 2007). Rule 403 is only a bar to evidence that is *unfairly* prejudicial, not merely prejudicial. Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). Accordingly, the limited evidence of Letourneau's disciplinary history that the district court admitted was not unfairly prejudicial and thus the district court did not abuse its discretion.

In sum, given that the district court did not abuse its discretion in declining to grant a spoliation instruction, and did not abuse its discretion in admitting evidence of Letourneau's disciplinary history, a new trial is not required to prevent a miscarriage of justice.

## B. Denial of Summary Judgment

Finally, Burris argues the district court erred in denying his motion for summary judgment on the insurance coverage issue. We will not review the district court's denial of the motion for summary judgment after the trial on the merits, because Burris

had a full and fair opportunity to litigate the issue of whether Versa received the March 2003 Letter. <u>EEOC v. Sw. Bell Tel., L.P.</u>, 550 F.3d 704, 708 (8th Cir. 2008).

## III. CONCLUSION

For the foregoing reasons, we affirm the district court.

_____