# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3554

_____

Lincoln Composites, Inc.

*Plaintiff - Appellee*

v.

Firetrace USA, LLC

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 19, 2015
Filed: June 8, 2016

_____

Before RILEY, Chief Judge, BEAM and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Firetrace USA, LLC (Firetrace) appeals the district court's[1] denial of its Federal Rule of Civil Procedure 59 motion for new trial or remittitur, following a jury verdict in favor of Lincoln Composites, Inc. (Lincoln). Finding no error, we affirm.[2]

## I. Background

Lincoln manufactures composite tanks for the storage and transport of natural gas in places where pipelines are unavailable. Firetrace makes custom designed fire suppression systems that detect and suppress fires. Through a series of transactions, Lincoln purchased fire detection tubing from Firetrace, which Lincoln then installed in its "Titan Module" tanks. There is no dispute that through these transactions the parties entered a contract for the purchase and delivery of Firetrace's tubing, although the parties dispute the terms and conditions of the contract. Some of the tubing was defective and, despite Firetrace's repeated attempts to fix the defect, the tubing failed, resulting in natural gas being vented into the air when there was not a fire. After 18 months, Lincoln decided it could no longer use the Firetrace tubing and demanded Firetrace refund the purchase price. Firetrace refused, contending the contract was governed by its terms and conditions, which limited remedies to repair or replacement of the tubing. Lincoln claimed its terms and conditions governed the contract between the parties, and these terms and conditions did not limit its remedies.

Lincoln then sued Firetrace in Nebraska state court for breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Firetrace removed the case to federal court. Following an eight-day trial, a jury returned a verdict in favor

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]We have jurisdiction pursuant to 28 U.S.C. § 1291.

of Lincoln, finding Firetrace breached an express warranty to Lincoln.  The jury awarded damages in the amount of $920,227.76.

Firetrace then filed a Rule 59 motion.  Firetrace alleged Lincoln failed to present sufficient evidence on several aspects of its claim and that the district court made several errors in instructing the jury.  Prior to the district court ruling on Firetrace's Rule 59 motion, Firetrace appealed from the final judgment entered as well as from orders by the district court denying Firetrace's motion for sanctions and Firetrace's motion for summary judgment.  The district court ultimately denied the Rule 59 motion.

## II.  Jurisdictional Issue

As a preliminary matter, Lincoln argues we do not have jurisdiction over Firetrace's appeal because Firetrace filed its notice of appeal while its Rule 59 motion was still pending and never filed an amended notice of appeal.  Under Federal Rule of Appellate Procedure 4(a)(4)(B)(ii), once its Rule 59 motion was denied, Firetrace was required to file an amended notice of appeal.[3]  Lincoln contends Firetrace's failure to file an amended notice of appeal deprives us of jurisdiction.  See Miles v.

---

[3]Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) requires:

> A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

One of the motions listed in Rule 4(a)(4)(A) is a Rule 59 motion for new trial.  See Fed. R. App. P. 4(a)(4)(A)(v).

Gen. Motors Corp., 262 F.3d 720, 722–23 (8th Cir. 2001) (finding no jurisdiction to review order denying new trial where no amended notice of appeal filed).

Firetrace concedes it did not file an amended notice of appeal but asserts it filed the "functional equivalent." Following the district court's denial of its Rule 59 motion, Firetrace filed an Amended Statement of Issues in our court that included the issue "[w]hether the district court erred by denying Firetrace's Motion for Remittitur and for New Trial." Firetrace also filed an Amended Designation of Record on Appeal that added both parties' briefings related to the motion for new trial and the district court's order denying the motion. Firetrace points out it filed its Amended Statement of Issues within the proper time and asks us to construe that as its Amended Notice of Appeal.

We "liberally construe the requirements of Rule 3" of the Federal Rules of Appellate Procedure. Smith v. Barry, 502 U.S. 244, 248 (1992). We have "jurisdiction over [an] underlying order if the appellant's intent to challenge it is clear, and the adverse party will suffer no prejudice if review is permitted." Hallquist v. United Home Loans, Inc., 715 F.3d 1040, 1044 (8th Cir. 2013). Even when the notice is "technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." Smith, 502 U.S. at 248 (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 316–317 (1988)). At oral argument, Lincoln was unable to explain how Firetrace's filings differed from an amended notice of appeal or how it was prejudiced. We conclude Firetrace made its intent clear by filing its Amended Statement of Issues and Amended Designation of the Record on Appeal and that Lincoln will not be prejudiced if we allow review. We now consider the issues raised on appeal.

### III.  Firetrace's Motion for Remittitur or New Trial

Firetrace argues that it is entitled to a new trial on the merits based on sufficiency of the evidence and faulty jury instructions and either a new trial on or remittitur of damages.  "[T]he granting or denial of a new trial is a matter of procedure governed by federal law."  Bank of Am., N.A. v. J.B. Hanna, LLC, 766 F.3d 841, 851 (8th Cir. 2014) (alteration in original) (quoting Brown v. Royalty, 535 F.2d 1024, 1027 (8th Cir. 1976)).  We review the denial of a motion for new trial for an abuse of discretion.  Weitz v. MH Washington, 631 F.3d 510, 523 (8th Cir. 2011).  A district court abuses its discretion in denying a motion for new trial based on sufficiency of the evidence "if the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice."  Bennett v. Riceland Foods, Inc., 721 F.3d 546, 552–53 (8th Cir. 2013) (quoting The Shaw Grp., Inc. v. Marcum, 516 F.3d 1061, 1067 (8th Cir. 2008).  "Remittitur is appropriate where the verdict is so grossly excessive as to shock the judicial conscience."  Id. at 553.  A new trial or remittitur is not appropriate "merely because we may have arrived at a different amount from the jury's award."  Id.

### A.  Motion for New Trial Based on Sufficiency of the Evidence

Firetrace first asserts it is entitled to a new trial because the jury's finding that it breached an express warranty to Lincoln is against the weight of the evidence.  "When the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal."  Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 867 (8th Cir. 2004) (quoting Jones v. Swanson, 341 F.3d 723, 732 (8th Cir. 2003)).  In making this determination, the district court "can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'"  White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992) (quoting Ryan v. McDonough Power Equip., 734 F.2d

385, 387 (8th Cir. 1984)). Because this is a diversity action, we apply the substantive law of the forum state, in this case, Nebraska. Bank of Am., 766 F.3d at 851–52. Under Nebraska law, "the existence and scope of an express warranty is one of fact." Peterson v. N. Am. Plant Breeders, 354 N.W.2d 625, 629 (Neb. 1984).

The parties agree they entered into a contract for the sale of tubing but dispute some of the terms of the contract, with each party insisting the contract was governed by its own terms and conditions. Both parties' terms provided an express warranty. The terms differed, however, in one key respect: Upon a breach of the express warranty, Firetrace's terms limited Lincoln's remedies to repair or replacement of any defective tubing; Lincoln's terms had no limitation on remedies.

To reach a verdict, the jury had to decide whose terms and conditions governed the contract. Because there was no special verdict, we do not know specifically how the jury reached its verdict. Nonetheless, the parties agree that by finding that Firetrace breached an express warranty to Lincoln *and* awarding damages to Lincoln, the jury must have decided the case in one of two ways. The jury could have decided that Firetrace's terms and conditions governed, which would mean it concluded that the exclusive repair or replace remedy failed of its essential purpose, making a remedy of damages available. Or, the jury could have decided that Lincoln's terms and conditions governed, which allowed for a remedy of damages as awarded. Firetrace argues the evidence does not support either conclusion, so we examine each in turn.

Firetrace argues that, if the jury found that Firetrace's terms governed, it nevertheless erroneously concluded that Firetrace's limited remedy of repair or replace failed of its essential purpose. Nebraska law allows a seller to establish exclusive limited warranties, as well as to limit the availability of damages. John Deere Co. v. Hand, 319 N.W.2d 434, 437 (Neb. 1982) (citing Neb. U.C.C. § 2-719). But, "[w]here circumstances cause an exclusive or limited remedy to fail of its

essential purpose, remedy may be had as provided in this act." Id. (quoting Neb. U.C.C. § 2-719(2)). As explained in the comments to § 2-719, "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this article." Id. (quoting Neb. U.C.C. § 2-719 cmt. 1). "Where a seller is given a reasonable chance to correct defects and the equipment still fails to function properly, the limited remedy of repair or replacement of defective products fails of its essential purpose." Id. If this happens, the buyer may invoke any remedies available under the U.C.C., including damages. Id.

The district court concluded a reasonable jury could find that Firetrace's limited remedy of repair or replacement failed of its essential purpose when Firetrace was not able to repair the tubing properly within a reasonable time. Don Baldwin, Lincoln's engineering director, testified he worked on the Titan Modules beginning in 2008. Baldwin described the repeated failures of the tubing, and Firetrace's multiple, unsuccessful attempts, over the course of a year and a half, to provide tubing that did not fail. Dr. Paul Gramann, an expert in engineering and plastics, testified about how and why the tubing failed. He testified the failures were the result of manufacturing defects. Gramann predicted that the Firetrace tubing still in Titan Modules out in the field also would fail at some point. Whether Lincoln was deprived of the substantial value of its contract by Firetrace's limited remedy of repairing and replacing the tubing was a question for the jury. John Deere Co., 319 N.W.2d at 438. The district court did not abuse its discretion when it denied Firetrace's motion for a new trial because there was sufficient evidence for a reasonable jury to find that Firetrace's limited repair or replace remedy failed of its essential purpose.

In the alternative, if the jury found that Lincoln's terms governed, Firetrace asserts this too was error. For Lincoln's terms to apply, the jury must have found that Lincoln's terms and conditions were listed on its website. (In each of the purchase

-7-

orders it sent Firetrace, Lincoln referenced these terms and conditions and noted their availability on its website.) Firetrace asserts the jury could not have reasonably come to this conclusion because no witness testified conclusively that the terms and conditions were posted on the website. The district court disagreed, finding there was sufficient evidence for the jury to reasonably infer that Lincoln's terms and conditions were available on its website during the relevant period and that Firetrace had agreed to be bound by them.

Under Nebraska law, a party is generally charged with knowledge of the contents of a writing he or she signs and cannot avoid a contract just because he or she failed to read the entire writing. Ray Tucker & Sons, Inc. v. GTE Directories Sales Corp., 571 N.W.2d 64, 68 (Neb. 1997). Jessica Yockey, the Lincoln purchasing agent in charge of sending purchase orders to Firetrace, testified she sent at least 10 purchase orders to Firetrace between 2008 and 2012 and all contained the following notice: "LINCOLN COMPOSITES GENERAL TERMS & CONDITIONS APPLY. PLEASE DOWNLOAD A COPY AT WWW.LINCOLNCOMPOSITES.COM." While Yockey testified she had not personally checked Lincoln's website to make sure Lincoln's terms and conditions were there, she also testified about other suppliers she had worked with who attempted to renegotiate terms and conditions, suggesting that those suppliers were able to access the terms and conditions on Lincoln's website. Yockey testified Lincoln's terms and conditions had remained unchanged from the time she began working as a purchasing agent for Lincoln in 2008. This testimony was corroborated by the terms and conditions themselves, which were admitted as an exhibit and showed a revision date of October 17, 2005. We cannot say the district court abused its discretion in denying Firetrace's motion for a new trial because it found there was sufficient evidence for a reasonable jury to conclude that Firetrace was on notice that Lincoln's terms and conditions existed and that Lincoln intended those terms and conditions to be binding on Firetrace.

**B. New Trial Based on Jury Instructions**

Firetrace argues it is entitled to a new trial because the district court erred in several of its instructions to the jury. We generally review a district court's jury instructions for an abuse of discretion, giving the court broad discretion in the form and language it uses. Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1054 (8th Cir. 2006). Our review is limited to determining "whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and accurately submitted the issues to the jury." Id. We will not reverse a jury verdict unless an erroneous instruction affects a party's substantial rights. Id. A district court abuses its discretion in denying a new trial based on erroneous jury instructions only if "the errors misled the jury or had a probable effect on the jury's verdict." Id.

Firetrace appeals the failure of the district court to give its requested jury instruction on failure of essential purpose. Firetrace requested the court instruct the jury, in part, that:

> To show that the limited remedy of repair and replacement has failed of its essential purpose, Lincoln Composites must prove all of the following elements by the greater weight of the evidence:
>
> 1. That Lincoln Composites provided Firetrace with a reasonable opportunity to fix the defects in the tubing;
>
> 2. That despite Firetrace's attempts to fix the defects or provide replacement tubing, the tubing still failed to function properly; and
>
> 3. That this deprived Lincoln Composites of the substantial value of its contract with Firetrace.
>
> The mere fact that a defect is not properly remedied after the first attempt, or even multiple attempts to repair or replace it does not mean

-9-

the warranty failed its essential purpose.  Additionally, if Defendant stands ready to perform, there is no failure of essential purpose, even though the buyer remains highly unsatisfied with the results obtained by the limited remedy.  Finally, a repair or replace remedy does not fail of its essential purpose so long as repairs are made each time a defect arises.

At the final instruction conference, the court informed the parties it would instruct the jury as follows:

To show that the limited remedy of repair and replacement has failed of its essential purpose, Lincoln Composites must prove all of the following elements by the greater weight of the evidence:

1.      That Lincoln Composites provided Firetrace with a reasonable opportunity to fix the defects in the tubing;

2.      That despite Firetrace's attempts to fix the defects or provide replacement tubing, the tubing still failed to function properly; and

3.      That this deprived Lincoln Composites of the substantial  value of its contract with Firetrace.

It is for you to decide how many attempts were needed, and what was a reasonable time frame in which to remedy the defect, before the remedy would fail of its essential purpose, if it did.

Firetrace did not object to the court's revised instruction at the final jury instruction conference, so our review is for plain error.  See Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 772 (8th Cir. 1998) ("[T]he mere tender of an alternative instruction without objecting to some specific error in the trial court's charge or explaining why the proffered instruction better states the law does not preserve the

error for appeal." (quoting Campbell v. Vinjamuri, 19 F.3d 1274, 1277 (8th Cir. 1994))).

Firetrace asserts that its proposed instruction "more closely follows the law of Nebraska." We disagree. Although Nebraska law allows a seller to limit a buyer's remedies to repair and replacement warranties, the Nebraska Supreme Court has stated that "[t]he purpose of an exclusive remedy of 'repair or replacement' from a buyer's viewpoint is to give him goods which conform to the contract within a reasonable time after a defect is discovered." John Deere Co., 319 N.W.2d at 437. "Where the seller is given a reasonable chance to correct defects and the equipment still fails to function properly, the limited remedy of repair or replacement of defective parts fails of its essential purpose." Id. The court's jury instruction was a correct statement of Nebraska law and recognized that the key issue for the jury to decide was whether Firetrace was given a reasonable amount of time in which to correct defects in the tubing. Accordingly, we conclude the district court did not plainly err in not giving Firetrace's proposed instruction. See Slidell, 460 F.3d at 1057.

Firetrace moved pretrial for sanctions based on Lincoln's alleged spoliation of evidence. Firetrace asserted Lincoln intentionally destroyed or failed to preserve tubing that should have been retained for the jury and provided false discovery responses. As a sanction, Firetrace requested an adverse inference instruction. Following extensive briefing, the court[4] denied the request, finding there was no evidence to support Firetrace's allegations.

---

[4]The Honorable Cheryl R. Zwart, United States Magistrate Judge for the District of Nebraska, to whom the case was referred for disposition of pretrial matters pursuant to 28 U.S.C. § 636(B)(1)(a), presided over the hearing on Firetrace's motion for sanctions and issued a ruling.

In its proposed instructions, Firetrace included an adverse inference instruction. The court's final set of jury instructions did not include Firetrace's proposed instruction. When the court asked Firetrace at the final jury instruction conference whether it had any other proposed instructions, Firetrace stated it did not. We therefore review the district court's failure to submit Firetrace's proposed instruction for plain error. See Littleton v. McNeely, 562 F.3d 880, 890 (8th Cir. 2009) (failure to object to court's rejection of proposed jury instruction waives objection).

On appeal, Firetrace argues the jury should have been allowed to review the evidence and decide if there was sufficient evidence to support Firetrace's claim for spoliation. Firetrace asserts the court wrongfully took that determination away from the jury by not giving its requested instruction. Federal law applies to determine whether an adverse inference instruction was warranted. See Burris v. Gulf Underwriters Ins. Co., 787 F.3d 875, 879 (8th Cir. 2015). For "an adverse inference instruction for spoliation to be warranted, a district court is required to make two findings: '(1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party.'" Id. (quoting Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 460 (8th Cir. 2013) (internal alteration and quotation omitted)). Because of the gravity of an adverse inference instruction, which "brands one party as a bad actor," we have concluded these findings must be explicitly made on the record before a district court may submit an adverse inference instruction. Hallmark, 703 F.3d at 461.

Here, Firetrace did not ask the court to make the required findings with respect to its adverse inference instruction. It did not even object to the magistrate judge's pretrial order denying its motion for sanctions or ask the district court to review the evidence it had previously submitted. The trial testimony it relies upon is, at best, equivocal. We conclude the district court did not plainly err in not giving an adverse inference instruction. See Burris, 787 F.3d at 879–80.

-12-

Firetrace submitted a proposed jury instruction on product misuse. Although the district court initially included an instruction regarding misuse, it decided, over Firetrace's objection, to remove it. Our review is for an abuse of discretion. Dupont v. Fred's Stores of Tennessee, Inc., 652 F.3d 878, 882 (8th Cir. 2011).

Firetrace requested the court instruct the jury as follows:

Misuse of Product

Defendant claims that the Fire Detection Tubing it shipped to Plaintiff was not defective and complied with its warranty. Defendant alleges that any defects in the Fire Detection Tubing arose because Plaintiff misused the Fire Detection Tubing during its storage, shipment, installation, and maintenance. If you find that Plaintiff's unprotected shipment or storage, rough-handling during installation, or failure to follow plain and unambiguous instructions regarding maintenance schedules were not a use reasonably foreseen by the Defendant, and if you find that this misuse was the proximate cause of Plaintiff's injuries, you must find for Defendant.

"A party is entitled to a jury instruction on its theory of the case if the instruction is both legally accurate and supported by the evidence." Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 499 (8th Cir. 2010). But "the trial court is not required to instruct on issues that do not find support in the record." Brown v. Sandals Resort Int'l., 284 F.3d. 949, 953 (8th Cir. 2002). Here, Lincoln does not dispute that Firetrace's proposed instruction was a correct statement of Nebraska law. The dispute is whether there was evidence in the record to support a jury instruction based on misuse.

The record supports the district court's ruling that it was not unforeseeable to Firetrace how Lincoln would use its tubing in the Titan Modules, including how the tubing would be shipped and stored. Just prior to entering into a contractual

-13-

agreement in late 2009, Lincoln and Firetrace exchanged numerous emails about how Lincoln planned to incorporate the Firetrace tubing into the Titan Modules and the locations where the modules would be sent. Additionally, there was evidence Lincoln actively encouraged Firetrace engineers to visit its facility to review its use of the Firetrace tubing to make sure the tubing was being used correctly. Firetrace engineer Ryan Gamboa testified there was nothing about Lincoln Composites' use of the Titan Module that he was not aware of after he visited the plant in 2011.

Even if Firetrace was entitled to an instruction on misuse of product, however, we conclude any error was harmless. Firetrace does not challenge the district court's instruction on foreseeability and proximate cause and, in closing, Firetrace's counsel argued, without objection, it was Lincoln's use of the tubing that made it fail, not the tubing itself. Firetrace's counsel further argued it was not until Firetrace engineers visited the Lincoln plant in September 2011 that they understood how the tubing was being used. Firetrace has not shown it was prejudiced by the failure to give the misuse of product instruction and we cannot say the outcome of this trial would have been different had the instruction been given. See Townsend v. Bayer Corp, 774 F.3d 446, 463–64 (8th Cir. 2014).

## C. Remittitur or New Trial on Damages

Firetrace argues the district court erred by not granting its motion for a remittitur or new trial on damages, alleging Lincoln did not present sufficient evidence to support the amount of damages awarded by the jury. Firetrace challenges both the jury's award of direct damages and its award of consequential damages.[5]

---

[5]On appeal, Firetrace asserts its pretrial objection to Lincoln's proposed jury instruction on consequential damages preserved error. However, "[i]n order to properly preserve a claim of instructional error for appellate review, a party is not only required to make a sufficiently precise objection before the district court, but it must also propose an alternate instruction." Caviness v. Nucor-Yamato Steel Co.,

The parties agree the Nebraska U.C.C. applies to this case. Under the Nebraska U.C.C., the measure of direct damages for the breach of an express warranty "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . ." Neb. U.C.C. § 2-714(2). "The measure set forth in § 2-714 is the equivalent of what is known as the diminished value rule." T.O. Haas Tire Co., Inc. v. Futura Coatings, Inc., 507 N.W.2d 297, 304 (Neb. Ct. App. 1993). A buyer asserting a breach of warranty under the U.C.C. has the burden to prove damages. McCoolidge v. Oyvetsky, 874 N.W.2d 892, 901 (Neb. 2016). "They do not have to prove damages with mathematical certainty, but the evidence must be sufficient to allow the trier of fact to estimate the actual damages with reasonable certainty." Id.

The jury found the value of the tubing as warranted was $857,334.48 and the value of the tubing as received was zero. Firetrace does not dispute the jury's conclusion of the value of the tubing as warranted but argues Lincoln failed to prove that the tubing as received had no value. Firetrace claims the only evidence Lincoln offered to support its claim was the testimony of its President and CEO, John Schimenti. Schimenti testified the tubing had no value to Lincoln. Firetrace argues this evidence, by itself, was insufficient to support the jury's award. But Schimenti also testified the tubing that had already been installed had to be removed and Lincoln would not charge customers for the removal.

---

105 F.3d 1216, 1220 (8th Cir. 1997) (quoting Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1104 (8th Cir. 1996)). Because Firetrace did not propose a jury instruction on consequential damages, "the claim is waived, and we will reverse only if the district court's instructions constitute plain error." Id. (quoting Kehoe, 96 F.3d at 1104). We conclude the court did not plainly err in its instruction because the instruction was a correct statement of Nebraska law and supported by the evidence. Id.

Don Baldwin, an engineering director at Lincoln, also testified the tubing had no value to Lincoln because of "inadvertent releases"—that is, random releases of large amounts of natural gas into the atmosphere due to the tubing falsely "detecting" a fire that, according to Baldwin, would require evacuations of neighborhoods. Baldwin testified Lincoln felt obligated to replace all the previously installed Firetrace tubing before it failed because of this risk. In addition, Lincoln's expert Gramann testified that he believed all of the remaining tubing would fail at some point.

Firetrace concedes this testimony might demonstrate there was a latent defect in the tubing but asserts it did not address the value of the tubing. Firetrace contends it presented evidence from which a reasonable jury could find that most of the tubing had not failed, giving the tubing at least some salvage value, and points out that Lincoln passed on the cost of the Firetrace tubing to its buyers. As the district court noted, however, the determination of whether even a low risk of failure rendered the tubing worthless to Lincoln was a question for the jury. "In determining whether to grant a new trial, a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." King v. Davis, 980 F.2d 1236, 1237 (8th Cir. 1992). Firetrace's arguments to the jury may have been compelling, but the jury's verdict is not so against the great weight of the evidence as to rise to the level of a miscarriage of justice or so excessive as to shock the judicial conscience. See Bennett, 721 F.3d at 552–53. Under the circumstances, the district court did not abuse its discretion in denying Firetrace's motion for remittitur or new trial.

Firetrace also challenges the jury's award of $62,893.29 in consequential damages because at least some of the award was for future replacement of tubing that Firetrace asserts was no longer under warranty, calling into question whether Lincoln would continue to replace that tubing. Firetrace asks that this portion of the verdict

either be remitted or subject to a new trial. Under Nebraska law, "it is the jury's duty to determine the amount of damages, [but] it is the duty of the trial court to refrain from submitting the issue of damages to the jury where the evidence is such that a jury could not determine the issue without indulging in speculation or conjecture." Lesiak v. Cent. Valley Ag Co-op., Inc., 808 N.W.2d 67, 76 (Neb. 2012) (internal citations omitted). To submit damages to a jury, there must be "enough evidence to provide a reasonable basis for the jury to estimate the extent of the damage." Id. at 77.

Lincoln presented evidence through two of its engineers, Ken Halvorsen and Ryan Oatman, about travel and labor expenses Lincoln had already incurred in replacing tubing already installed in Titan Modules. Halvorsen estimated Lincoln would incur an additional $57,140.00 in future costs to replace the remaining tubing based on Lincoln's estimate that it would take four trips of 7–10 days each to replace the tubing in all the modules located in Vietnam and a separate trip of 7–10 days to replace the tubing in 5 modules in Peru. Firetrace challenges this estimate of future costs, pointing out that none of the modules equipped with Firetrace tubing are still under warranty and so Lincoln has no continuing obligation to its customers to replace the tubing. Firetrace contends the award of consequential damages also ignores evidence that the customers in Vietnam have not responded to Lincoln's attempts to replace the tubing in their modules.

Lincoln presented sufficient evidence as to the cost of travel and labor expenses it has incurred and will incur in the future to replace the Firetrace tubing to support the consequential damages awarded by the jury. Under Nebraska law, damages need not be proved with mathematical certainty. El Fredo Pizza, Inc. v. Roto-Flex Oven Co., 261 N.W.2d 358, 363 (Neb. 1978); see also Neb. U.C.C. § 2-715, cmt. 4 ("Loss may be determined in any manner which is reasonable under the circumstances."). It was the jury's responsibility to weigh the evidence and determine whether Lincoln would ultimately replace the tubing in all these modules

and at what cost.  See <u>White</u>, 961 F.2d at 780–81.  Firetrace's challenge to the estimate of Lincoln's future consequential damages is in essence an attack on the jury's credibility determinations.  Firetrace asks us to make a factual finding that, despite its witnesses' testimony to the contrary, Lincoln did not intend to replace the Firetrace tubing still remaining in Titan Modules.  We decline to second-guess the jury's credibility determinations, <u>see</u> <u>Parkhurst v. Belt</u>, 567 F.3d 995, 1002 (8th Cir. 2009), and the district court did not abuse its discretion in denying Firetrace's motion for remittitur or a new trial on the award of consequential damages.  <u>See</u> <u>Bennett</u>, 721 F.3d at 552–53.

## IV.  Conclusion

The judgment of the district court is affirmed.

_____