# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-2188
_____

Nycoca Hairston

*Plaintiff - Appellant*

v.

Christine Wormuth, Secretary Department of the Army

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff
_____

Submitted: January 10, 2024
Filed: July 12, 2024
_____

Before LOKEN, KELLY, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

Nycoca Hairston asserts that while she was an employee at the United States Army's Pine Bluff Arsenal her immediate supervisor sexually harassed her, and when she complained about it, she was unlawfully fired in retaliation.[1] She sued the

---

[1]Hairston initially brought sex-based hostile work environment and retaliation claims against the Army under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

Secretary of the Army (the Army) under Title VII, and following a jury trial on her retaliation claim, the Army prevailed. Hairston appeals the district court's[2] denial of her post-trial motions and its decision to limit the testimony of one of her witnesses. We affirm.

I.

Hairston's primary challenge is to the district court's denial of her two post-trial motions. Although neither party raises the issue, our first task is determining whether we have jurisdiction over this challenge. See McAdams v. McCord, 533 F.3d 924, 927 (8th Cir. 2008) ("'[E]very federal appellate court has a special obligation to consider its own jurisdiction' [so w]e will raise jurisdictional issues sua sponte when we believe we lack jurisdiction, even if the parties do not address the issue." (quoting Thomas v. Basham, 931 F.2d 521, 522–23 (8th Cir. 1991))).

After a two-day trial, the jury returned a verdict in favor of the Army on May 6, 2022. The court entered judgment on May 9, 2022. On June 6, 2022, Hairston—proceeding pro se at that time[3]—timely filed a Motion for New Trial and a Motion to Alter or Amend Judgment. See Fed. R. Civ. P. 59(a)(1)(A), 60(b). In those motions, she asked the district court to set aside the judgment and grant her a new trial on several grounds.

---

§§ 2000e–2000e-17. The district court granted the Army summary judgment on both claims. Hairston appealed, and we affirmed as to her hostile work environment claim but reversed as to her retaliation claim. Hairston v. Wormuth, 6 F.4th 834, 845 (8th Cir. 2021).

[2]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

[3]Hairston was represented by counsel before and during trial, but she discharged the attorneys that represented her at trial after the jury returned its verdict.

Also on June 6, 2022, Hairston—still proceeding pro se—filed her appeal. In her pro se notice of appeal, she stated that she was appealing "from the final judgment" in the case. On June 7, 2022, the district court summarily denied both of Hairston's pro se post-trial motions.

On September 6, 2022—three months after Hairston filed her pro se notice of appeal—Hairston's appellate counsel filed his appearance, and he has since represented her in this case. On December 15, 2022, Hairston's counseled opening brief was filed in this court. In it, Hairston asserts that "[t]he purpose of [this] appeal is to challenge the district court's denial of [her] two post-trial motions—a motion for a new trial and a motion to alter or amend judgment."

As the above timeline makes clear, Hairston filed her notice of appeal before the district court ruled on her post-trial motions. She did not mention these motions in the notice, and her contemporaneously filed supplement to the notice did not identify them either. She simply answered "Y" in response to the question "Pending Motions?" on the supplement form. See Burgess v. Suzuki Motor Co., 71 F.3d 304, 307 (8th Cir. 1995) (noting we can rely on notice of appeal and appeal information form in determining scope of an appeal); cf. Foman v. Davis, 371 U.S. 178, 179–82 (1962) (reversing circuit court's dismissal of appeal for lack of jurisdiction when petitioner's premature first notice of appeal and defective second notice of appeal together manifested the intent to seek review of both the district court's dismissal and its denial of petitioner's motions, and the defect neither misled nor prejudiced the respondent).

After the district court ruled on her post-trial motions, neither Hairston nor counsel amended the notice of appeal. Nor was anything filed in this court within the proper time that could be construed as a functional equivalent to a notice of appeal. See Lincoln Composites, Inc. v. Firetrace USA, LLC, 825 F.3d 453, 458 (8th Cir. 2016) (reviewing order decided after notice of appeal was filed, even though amended notice was never filed, because what appellant did file—an Amended Statement of Issues and Amended Designation of the Record on Appeal—served as

"functional equivalent" because it made appellant's intent to challenge the order clear and appellee would not have been prejudiced if we allowed review). While Hairston and her counsel did submit filings to this court before filing Hairston's opening brief, none of these filings even mentions the post-trial motions, though two of the five motions for an extension of time mention her notice of appeal.

We recognize "the important principle for which Foman stands—that the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits." Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988) (quoting 371 U.S. at 181). And this court "traditionally construes notices of appeal liberally." Burgess, 71 F.3d at 307 (citations omitted). "[B]ut the intent to appeal the judgment in question must be apparent and there must be no prejudice to the adverse party," id., and "a court may not waive the jurisdictional requirement of Rule 3 if it finds that it has not been met," id. at 306 (citing Torres, 487 U.S. at 317); see Fed. R. App. P. 3.[4]

Even liberally construing Hairston's notice of appeal, it is inadequate to put her post-trial motions before us. See Burgess, 71 F.3d at 307. Rule 4 "requires a new or amended notice of appeal when an appellant wishes to challenge an order disposing of a motion listed in Rule 4(a)(4)(A) or a judgment's alteration or amendment upon such a motion." Fed. R. App. P. 4(a)(4)(B)(ii) advisory committee's note to 2009 amendment.[5] Hairston's "Y" response to the "Pending

---

[4]Nor can it "apply 'harmless error' analysis to defects in a notice of appeal." Torres, 487 U.S. at 317 n.3. To do so would "misunderstand[] the nature of a jurisdictional requirement: a litigant's failure to clear a jurisdictional hurdle can never be 'harmless' or waived by a court." Id.

[5]See also Fed. R. App. P. 3(c)(1)(B), 4(a)(4)(B)(ii). Federal Rule of Appellate Procedure 3(c)(1)(B) requires the following: "The notice of appeal must . . . designate the judgment—or the appealable order—from which the appeal is taken." Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) provides:

Motions?" question indicates there were post-trial motions pending but, without more, it does not make her intent to appeal the district court's later rulings on those motions apparent.[6] Consequently, we lack jurisdiction over her post-trial motions, see Miles v. Gen. Motors Corp., 262 F.3d 720, 722–23 (8th Cir. 2001), including her sufficiency of the evidence challenge that she did not otherwise preserve.

## II.

We do have jurisdiction to address Hairston's challenge to the district court's decision limiting the testimony of one of her witnesses at trial. "District courts enjoy 'wide discretion in ruling on the admissibility of proffered evidence.'" Retz v. Seaton, 741 F.3d 913, 917 (8th Cir. 2014) (quoting U.S. Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 689–90 (8th Cir. 2009)). "We will not reverse a judgment on the

> A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal— in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

"One of the motions listed in Rule 4(a)(4)(A) is a Rule 59 motion for new trial." Lincoln Composites, Inc., 825 F.3d at 458 n.3 (citing Fed. R. App. P. 4(a)(4)(A)(v)). Another is a Rule 60 motion. See Fed. R. App. P. 4(a)(4)(A)(vi).

[6]See Atakpu v. Sch. Dist. of Kansas City, 243 F. App'x 199, 200 n.1 (8th Cir. 2007) (unpublished) (holding that appellant's failure to file amended notice of appeal meant motions pending when notice of appeal was filed were not properly before us); Notice of Appeal Suppl., Atakpu v. Sch. Dist. of Kansas City, No. 06-3380 (8th Cir. Sept. 13, 2006) (responding, pro se, to "Pending Motions?" question on supplement to notice of appeal form with "Yes"); Phox v. 21c Mgmt. LLC, No. 22-1453, 2022 WL 16847603, at *1 (8th Cir. Nov. 10, 2022) (per curiam) (unpublished) (declining to consider arguments raised for the first time in post-judgment motions when appellant failed to file a new or amended notice of appeal after those motions were denied); Notice of Appeal Suppl., Phox v. 21c Mgmt. LLC, No. 22-1453 (8th Cir. Nov. 10, 2022) (responding, pro se, to "Pending Motions?" question on supplement to notice of appeal form with "Yes").

basis of an erroneous evidentiary ruling absent a showing that the ruling had a substantial influence on the jury's verdict." Hohn v. BNSF Ry. Co., 707 F.3d 995, 1001 (8th Cir. 2013) (citation omitted). We recite the relevant trial evidence to place this issue in context.

At trial, the jury heard that Hairston was hired at the Arsenal in January 2013. During her "probationary period"—which gave the Arsenal a year to see if she was a good fit—Hairston could be terminated without prior notice for her performance or conduct.

Hairston and the Army offered conflicting accounts about the work environment at the Arsenal and about Hairston's time there. The Army presented testimony that a few months into Hairston's employment at the Arsenal, the environment became characterized by "constant drama, driving toward chaos" due to her behavior. For example, Hairston resisted training, often became argumentative, and made multiple complaints that her coworkers did not like her. Hairston's coworkers also lodged complaints about her, first verbally and then in writing. Duane Johnson, Hairston's immediate supervisor, testified that at one point during an employee safety meeting, Hairston described how a coworker drove in front of her at an intersection, and Hairston said that if the coworker "ever did it again she would intentionally hit [the coworker's] car."

Hairston presented testimony that the work atmosphere at the Arsenal was "a mess," "clan-ish" and "cliquish," before she started working there. In August 2013, Hairston and her coworkers attended a party at the home of Deborah Moncrief, her second line supervisor. At the party, Johnson put a saltshaker down Hairston's shirt. A couple weeks later, Hairston reported the incident to an Army Equal Employment Opportunity (EEO) counselor. He reported it to his supervisor, and his supervisor reported it to Moncrief. Moncrief then told Johnson about Hairston's allegation. Moncrief also said to Hairston that she "wouldn't [be] retaliated against after [she] told her about the salt shaker" incident. But according to Hairston, and contrary to Moncrief's assurance, Moncrief and Johnson retaliated against her by soliciting

complaints about her from her coworkers and producing a retroactive memorandum purporting to detail Hairston's prior misconduct—conduct that had not previously raised sufficient concern to rise to the level of requiring discipline. Then, in October 2013, Johnson gave Hairston "verbal counseling" about an alleged performance failure that had occurred several months prior.

Hairston also testified that on December 10, 2013, Johnson made an inappropriate, sexual comment in her presence about watching a "Victoria's Secret fashion show." Hairston, either immediately or the following day, reported the comment to her Sexual Harassment/Assault Response and Prevention (SHARP) representative. He reached out to his chain of command for guidance on what steps to take in response, contacted Moncrief on December 11, and forwarded Hairston's report to Moncrief on December 13. Moncrief fired Hairston that same day.

The jury also heard from Hairston's witness Robert Harrison, a Union representative and longtime Arsenal employee. Harrison testified about Hairston's tenure at the Arsenal, but Hairston also wanted him to testify about the results of a military law enforcement investigation into her conduct. That investigation began after Hairston made her sexual harassment allegation against Johnson, and it was initiated in response to an allegation that Hairston had sexual contact with Johnson without his consent. The investigator concluded that Hairston's conduct did not warrant titling or prosecution and no legal action was taken against her. After hearing Harrison's proffered testimony, the district court disallowed any testimony from Harrison about the investigation, finding that it was "irrelevant and more prejudicial than probative."

Harrison's excluded testimony would have informed the jury that Moncrief was aware of the military law enforcement investigation's focus, the questions investigators asked, and with whom the investigators spoke. The proffered testimony from Harrison, however, did not include any evidence that Moncrief received or read the military law enforcement investigation report before she fired Hairston. Indeed, Hairston's attorney admitted Hairston had no proof of that assertion. Further, it is

uncontested that Moncrief neither ordered the separate investigation into Hairston, nor was involved in it apart from being questioned herself. So, whether that investigation deviated from policy or professional standards, as Hairston alleges it did, is ultimately not relevant to her claim for retaliatory discharge. See Fed. R. Evid. 401, 402.

Given the tenuous connection between Harrison's excluded testimony and Hairston's retaliatory discharge claim, and the wealth of evidence presented to the jury about the work environment at the Arsenal and Hairston's role within it, it is unlikely that this testimony would have influenced the jury's verdict, let alone substantially influenced it. See Walker v. Kane, 885 F.3d 535, 538 (8th Cir. 2018) ("[E]videntiary rulings are reversed only for a clear and prejudicial abuse of discretion." (quoting Davis v. White, 858 F.3d 1155, 1159 (8th Cir. 2017))). The district court did not abuse its discretion by excluding this evidence.

III.

We affirm the judgment of the district court.

_____